**COTCHETT, PITRE & McCARTHY, LLP**
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
TYSON REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
San Francisco Airport Office Center
840 Malcom Road, Suite 200
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Co-Lead Counsel for Lead Plaintiff*
*City of Providence*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No. 5:19-cv-00764-BLF |
| This Document Relates to: | **LEAD PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT OF STOCKHOLDER DERIVATIVE ACTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALL ACTIONS | |
| | Related Derivative Case: |
| | 5:19-cv-02448-BLF |
| | Time:  9:00 a.m. Date:   August 8, 2024 Judge: Hon. Beth Labson Freeman Date First Action Filed: Feb. 12, 2019 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................... 1

ISSUES TO BE DECIDED ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 2

I.      INTRODUCTION .............................................................................................................. 2

II.     BACKGROUND ................................................................................................................ 3

       A.      Procedural History ................................................................................................ 3

       B.      The Parties' Extensive Settlement Negotiations ............................................... 4

III.    SETTLEMENT TERMS ..................................................................................................... 5

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................................... 6

       A.      The Settlement Confers Substantial Benefits on Oracle .................................... 7

       B.      The Risk, Complexity, Expense, and Likely Duration of the Litigation Favor
              Settlement ............................................................................................................. 8

       C.      The Settlement Was Negotiated After Substantial Investigation by Counsel
              with Extensive Experience in Complex Derivative Litigation ......................... 10

       D.      The Settlement Was Negotiated at Arm's-Length with the Active Assistance
              and Oversight of an Experienced Mediator ..................................................... 12

       E.      The Proposed Attorney's Fees and Expenses Are Fair and Reasonable ......... 12

V.     THE PROPOSED NOTICE IS REASONABLY CALCULATED TO APPRISE
       CURRENT STOCKHOLDERS OF THE ACTION AND AFFORD THEM AN
       OPPORTUNITY TO OBJECT .......................................................................................... 13

VI.   PROPOSED DEADLINES AND SCHEDULE OF EVENTS ............................................ 15

VII.  CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Comput., Inc. Derivative Litig.*
   No. 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ...................................... 7

*In re Atmel Corp. Derivative Litig.*
   No. 5:06-cv-04592-JF, 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) .............................. 14

*In re Bluetooth Headset Prod. Liab. Litig.*
   654 F.3d 935 (9th Cir. 2011).................................................................. 7

*Buccellato v. AT&T Operations, Inc.*
   No. 10-00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ..................................... 13

*In re Caremark Int'l. Inc. Derivative Litig.*
   698 A.2d 959 (Del. Ch. 1996).................................................................. 8

*Churchill Vill., LLC v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004).................................................................. 13

*City of Providence v. Ellison, et al.*
   Case No. 19-cv-02448-BLF .................................................................... 3

*Cohn v. Nelson*
   375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................... 13

*Hefler v. Wells Fargo & Co.*
   No. 16-cv- 05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................................ 12

*In re Hewlett-Packard Co. S'holder Derivative Litig.*
   716 F. App'x. 603 (9th Cir. 2017) ...................................................... *passim*

*Lee v. Fisher*
   70 F.4th 1129 (9th Cir. 2023) ................................................................ 9

*In re McKesson Corp. Derivative Litig.*
   No. 4:17- cv-0185-CW (N.D. Cal. Apr. 22, 2020) (JD, Ex. 5)...................................... 13

*In re NVIDIA Corp. Derivative Litig.*
   No. 06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)................................. 6, 8, 10

*In re Oracle Corp. Derivative Litig.*
   Master File No. C-10-03392-RS, ECF No. 35 (N.D. Cal. July 17, 2013) ........................... 14

*In re Oracle Corporation Securities Litigation,*
   Case No. 5:18-cv-04844-BLF .................................................................. 3

ii

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)..............................................................................*passim*

*In re Pinterest Derivative Litig.*
    No. 20-08331, 2022 WL 484961 (N.D. Cal. Feb. 16, 2022) .................................. 11

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009)................................................................................... 7

*Satchell v. Fed. Express Corp.*
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).......................... 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*
    *Liab. Litig.*
    736 F. App'x. 639 (9th Cir. 2018) ........................................................................ 13

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002)............................................................................... 13

*In re Walt Disney Co. Derivative Litig.*
    907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)............................... 9

**Statutes**

Del. Code § 102(b)(7) .................................................................................................... 9

Exchange Act Sections 10(b) and 20(a)....................................................................... 3, 9

**Federal Rule of Civil Procedure**

Fed. R. Civ. P. 23.1 ..................................................................................................... 6, 15

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 8, 2024 at 9:00 a.m. before the Honorable Beth Labson Freeman, in the San Jose Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Lead Plaintiff City of Providence ("Lead Plaintiff") will move the Court for an Order preliminarily approving the proposed settlement of the above-captioned action (the "Action") pursuant to Federal Rule of Civil Procedure 23.1.  This motion is based on the accompanying Memorandum of Points and Authorities, the Joint Declaration of Co-Lead Counsel Mark C. Molumphy and Alfred L. Fatale III ("Joint Declaration" or "Joint Decl.") and the documents attached thereto, including the Stipulation of Settlement, dated March 22, 2024 ("Stipulation"), as well as the pleadings and record on file, and such other matters as may be presented to the Court.[1]

### ISSUES TO BE DECIDED

1.      Should the Court preliminarily approve the proposed Settlement set forth in the Stipulation as within the range of what would be fair, reasonable, and adequate?

2.      Should the Court approve the form and method of providing notice to Current Oracle Stockholders?

3.      Should the Court set a date for a Settlement Fairness Hearing, along with deadlines for objections and Lead Plaintiff to file and serve a motion for final approval of the proposed Settlement and any motion for a Fee and Expense Amount to Plaintiffs' Counsel and a service award to Lead Plaintiff?

*   *   *

---

[1] All capitalized terms used herein that are not defined have the meanings provided in the Stipulation.

1

NOTICE OF MOTION AND MOTION FOR PRELIM. APPROVAL OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION; MPA
LEAD CASE NO. 5:19-CV-00764-BLF

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Lead Plaintiff City of Providence ("Lead Plaintiff"), Defendants Lawrence J. Ellison, Safra A. Catz, and Paula R. Hurd, as Trustee of the Hurd Family Trust and personal representative of the Estate of Mark Hurd[2] (the "Individual Defendants"), and nominal defendant Oracle Corporation ("Oracle" or the "Company") have agreed to resolve this derivative stockholder litigation on behalf of nominal Defendant Oracle.

The Settlement is the product of extensive and vigorous negotiations over the course of two years, supervised by a very experienced and respected mediator, Jed Melnick, Esq. (the "Mediator"), that included meetings and presentations between the Parties' counsel, and the exchange of numerous demands and counteroffers.  In the end, the Parties agreed upon a robust suite of corporate governance reforms improving Oracle's disclosures to public markets, to be in effect for at least five years, ensuring lasting changes that will benefit Oracle and specifically address the issues that led to this lawsuit.[3]

Based upon their experience, the evaluation of the facts and the applicable law, the significant risks and expenses of protracted litigation against the Individual Defendants, as well as the substantial commitments provided under the Settlement, Co-Lead Counsel and Lead Plaintiff submit that the proposed Settlement is an excellent result and in the best interests of Oracle.  Accordingly, Lead Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed Settlement as within the range of what is fair, reasonable, and adequate, (2) approve the form and method of providing notice to Oracle's stockholders, and (3) schedule a Settlement Fairness Hearing at which the Court will consider final approval of the Settlement, any application for a Fee and Expense Amount to Plaintiffs' Counsel and a service award to Lead Plaintiff, and entry of a final Judgment.

---

[2] Defendant Mark Hurd passed away during the pendency of the Action.
[3] The factual bases for the argument herein are set forth in the Joint Declaration.

## II. BACKGROUND

### A. <u>Procedural History</u>

In 2019, two stockholder derivative actions were filed on behalf of Oracle in this Court: *Chugh, et al. v. Berg, et al.*, Case No. 19-cv-00764-BLF, filed by Plaintiff Rajiv Chugh and Sarita Chugh and *City of Providence v. Ellison, et al.*, Case No. 19-cv-02448-BLF, filed by Lead Plaintiff. On June 26, 2019, the Court entered a stipulation and order consolidating the cases and, among other things, appointing City of Providence as Lead Plaintiff and Cotchett Pitre & McCarthy, LLP and Labaton Sucharow LLP (n/k/a/ Labaton Keller Sucharow LLP) as Co-Lead Counsel.  The Court also temporarily stayed the Action pending its decision on any motion to dismiss filed by defendants in the Securities Class Action (*In re Oracle Corporation Securities Litigation*, Case No. 5:18-cv-04844-BLF), but permitted Lead Plaintiff to file a consolidated complaint.

On July 8, 2019, Lead Plaintiff filed its Verified Stockholder Derivative Complaint against Safra A. Catz, Mark V. Hurd, Lawrence J. Ellison, and Thomas Kurian for alleged violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, as well as alleged breaches of fiduciary duties and seeking contribution and indemnification.

On March 22, 2021, in the Securities Class Action, the Court issued an order granting in part and denying in part defendants' motion to dismiss.  Addressing claims that Oracle and its management misrepresented the company's cloud business in public statements, including during quarterly earnings calls, the Court dismissed claims on all but thirteen of the fifty challenged statements and held that the plaintiff could proceed on a "narrow omission theory of securities fraud" based on Oracle's affirmative representations about cloud growth deceleration and the drivers of cloud growth. *See* Case No. 5:18-cv-04844-BLF, ECF No. 84 at 23, 35-36.

On June 4, 2021, Lead Plaintiff filed its Consolidated Amended Verified Stockholder Derivative Complaint ("Complaint"). ECF No. 45. Lead Plaintiff alleged that the Individual Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, and breached their fiduciary duties to Oracle, and sought various forms of relief, including damages, contribution, and indemnification.  The Complaint alleged, among other things, that the Individual Defendants made misleading statements and omissions to Oracle's stockholders concerning the revenue drivers

3

of Oracle's cloud services.  In particular, the Complaint alleged, in part, that the Individual Defendants underestimated the future growth and importance of cloud services while at the same time falsely touting that Oracle had superior cloud products and impressive sales and revenue growth in its cloud business.  Further, the Complaint alleged that Oracle executed stock repurchases to allegedly mask the Company's stagnating growth.  The Individual Defendants denied all allegations.

After the filing of the Complaint, on June 14, 2021, the Court entered a Stipulation and Order to Continue Stay of Derivative Action that, among other things, temporarily stayed the Action until the earlier of: (i) notification of a settlement of the Securities Class Action; (ii) the conclusion of the Securities Class Action by way of a final, non-appealable judgment; or (iii) an agreement of the Parties.  Ultimately, the parties in the Securities Class Action reached a settlement which was granted final approval on January 13, 2023 (*see* Case No. 5:18-cv-04844-BLF, ECF No. 148), allowing this Action to move forward.

**B.      The Parties' Extensive Settlement Negotiations**

Beginning in February 2022, the Parties retained the services of the Mediator to facilitate discussions about a possible negotiated resolution.  Prior to a formal mediation session, Oracle and the Individual Defendants produced almost 20,000 documents to Lead Plaintiff related to the allegations in the Complaint, including the Defendants' role in and oversight of market disclosures. On February 18, 2022, the Parties remotely participated in a formal mediation session held in tandem with the Securities Class Action.  However, no resolution of the matter was reached at that time. *See* Joint Decl. ¶¶ 11-13.

After the February 18, 2022 mediation session, the Parties continued to discuss the possibility of a mediated resolution and reengaged with the Mediator for those purposes after the Securities Class Action settled.  On October 8, 2022, Lead Plaintiff served a settlement demand letter informed by its counsel's investigation and the documents produced by Oracle and the Individual Defendants, setting forth its position to facilitate a discussion of potential governance reforms to address the conduct alleged in the Complaint.  On October 14, 2022, counsel for the Individual Defendants and Lead Plaintiff met virtually to discuss potential corporate governance reforms that could form the basis for a settlement of the Action.  While this meeting and other meetings and discussions in 2022 did not

4

NOTICE OF MOTION AND MOTION FOR PRELIM. APPROVAL OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION; MPA
LEAD CASE NO. 5:19-CV-00764-BLF

result in an agreement, the Parties agreed to continue their settlement discussions under the aegis of the Mediator and to exchange additional information with respect to potential corporate governance reforms. These discussions through the Mediator were extensive, included a detailed confidential written submission by Lead Plaintiff to the Mediator in September 2023, and lasted throughout much of 2023. *Id.* ¶¶ 14-15.

## III.    SETTLEMENT TERMS

On October 17, 2023, with the continued assistance of the Mediator, the Parties reached an agreement in principle on the material substantive consideration for the Settlement and drafted a written set of corporate governance reforms for Oracle to adopt, implement, and maintain as set forth herein. *Id.* ¶¶ 16. After negotiating and reaching agreement on the corporate governance provisions, the Parties then began negotiations about the payment of the fees and litigation expenses of Plaintiffs' Counsel. After negotiations amongst counsel through the Mediator, on January 22, 2024, Lead Plaintiff and Oracle agreed that, subject to Court approval, Oracle would pay attorneys' fees and expenses up to an aggregate amount of $700,000 to Plaintiffs' Counsel in consideration for the substantial benefits conferred by the Settlement upon Oracle and its stockholders. Lead Plaintiff and Oracle also agreed that Lead Plaintiff may seek court approval for a service award of $5,000 for its efforts, to be paid from the Fee and Expense Amount awarded by the Court. *Id.* ¶¶ 17.

As reflected in the Settlement, and in consideration for the releases provided therein, Defendants have agreed to the following corporate governance measures aimed directly at improving the process for disseminating information to public investors, *see* Stipulation ¶¶ 2-8:

- After each quarterly earnings conference call, Oracle's Legal Department will review a transcript of the conference call to evaluate whether any correction, amendment, or change to any of the statements made during the call should be considered.

- To the extent that the Legal Department believes it would be necessary or appropriate in connection with this review, the Legal Department may consult with representatives from Oracle's Finance, Investor Relations, Sales, or Accounting teams.

- Following its review of the quarterly earnings conference call transcript, the Legal Department will advise Oracle management in a timely fashion of the outcome of its review, so that the Company may determine whether a prompt corrective disclosure is appropriate.

- Each quarter, the Legal Department shall provide to the Board's Finance and Audit Committee an update concerning its review of the most recent earnings conference call transcript. The

update shall include whether, based on the facts and circumstances identified, any additional or clarifying disclosures have been made.

- The Board's Finance and Audit Committee shall review the Legal Department's update and take whatever actions, if any, it deems appropriate in response.

- Oracle shall amend the charter of the Board's Finance and Audit Committee to reflect that Committee's role in this process.

Under the Settlement, these reforms will be in place throughout Oracle for a period of at least five (5) years from the Effective Date of the Settlement unless otherwise modified, as provided in the Stipulation.[4]  At the conclusion of the five-year term, the Board's Finance and Audit Committee will review the process to determine whether it should be continued or modified.

In exchange for these reforms, on the Effective Date of the Settlement, Lead Plaintiff, the Company, and by operation of law the Current Oracle Stockholders,[5] will release any and all of the Released Plaintiffs' Claims (including Unknown Claims) against the Released Defendant Parties. Defendants will also release any and all Released Defendants' Claims (including Unknown Claims) against the Released Plaintiff Parties.  *See* Stipulation ¶¶ 15-17.

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under Rule 23.1(c) of the Federal Rules of Civil Procedure, "[a] derivative action may be settled … only with the court's approval" and after the provision of notice.  There is "a strong judicial policy" that favors settlement in complex cases, *see In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x. 603, 605 (9th Cir. 2017) ("*HP Derivative Litig.*"), especially in derivative litigation, which is "notoriously difficult and unpredictable."  *In re NVIDIA Corp. Derivative Litig.*, No. 06-06110, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).

When evaluating a stockholder derivative settlement, a district court must determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (citation omitted).  The court may consider a range of factors,

---

[4] The measures are subject to modification as a result of a change in law or regulations, or as necessary in the good-faith judgment of a unanimous vote or written consent of all of the independent directors of the Board. *See* Stipulation, B. 2.

[5] "Current Oracle Stockholders" means any Person that has held Oracle common stock as of the date of execution of the Stipulation and continues to hold their Oracle common stock through the date of the Settlement Fairness Hearing.

1    including the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of

2    further litigation, the amount offered in settlement, the stage of the proceedings, the experience and

3    views of counsel, and the reaction of class members to the proposed settlement.  *HP Derivative. Litig*,

4    716 F. App'x. at 605.  Furthermore, the Ninth Circuit gives deference to arm's-length negotiations.

5    *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (noting mediated resolution lacked

6    evidence of "fraud, overreach, or collusion").  The scope of release also factors into the fairness of a

7    settlement, as do the timing and manner of discussions of attorneys' costs and fees.  *See In re*

8    *Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 948 (9th Cir. 2011).

9           **A.        The Settlement Confers Substantial Benefits on Oracle**

10          The principal factor to be considered in determining the fairness of a proposed settlement of

11   a stockholder derivative action is the benefit to the nominal defendant company, as compared to the

12   risks posed by the derivative litigation.  *See In re Apple Comput., Inc. Derivative Litig*., No. 06-4128,

13   2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008).

14          Here, the Settlement provides tangible beneficial corporate reforms, specifically tailored to

15   address the alleged shortcomings with respect to Oracle's public disclosures about its business, as

16   well as the alleged lapses of Board oversight over that process, as described in the Complaint.  The

17   Settlement mandates an additional level of review and input from Oracle's Legal Department over

18   disclosures provided by Oracle's management during quarterly earnings conferences, as well as

19   additional consultation with other Oracle representatives as appropriate to help ensure that the

20   disclosures are accurate and complete.  Given the import of such earnings calls to the public market

21   and the risks to Oracle from any inaccurate reports, this protocol will confer substantial and immediate

22   benefits on Oracle and its stockholders.  Similarly, the Legal Department must provide quarterly

23   updates concerning its findings to the Board's Finance and Audit Committee, ensuring that there will

24   be Board-level oversight over management's representations during earnings calls, as well as the

25   ability to take immediate action as necessary to ensure the market is properly informed.  These review

26   procedures and oversight responsibilities will be memorialized in the Finance and Audit Committee's

27   charter.

28

Courts widely recognize the substantial economic value of corporate governance and oversight reforms. "[S]trong corporate governance is fundamental to the economic well-being and success of a corporation. Indeed, [c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *NVIDIA*, 2008 WL 5382544, at \*3. In particular, benefits to a corporation that are "causally related to the [derivative] lawsuit" may serve as valid consideration for approval of a settlement. *HP Derivative. Litig., supra,* 716 F. App'x. at 607. Here, the reforms, particularly in light of the substantial risks associated with continued litigation (discussed *infra*), are highly valuable to Oracle.

**B.      The Risk, Complexity, Expense, and Likely Duration of the Litigation Favor Settlement**

In the instant case, Lead Plaintiff's success was by no means assured. Lead Plaintiff faced significant risks and challenges if it continued to litigate the case.

First, Lead Plaintiff would have had to overcome Defendants' motions to dismiss by demonstrating the futility of making a pre-suit demand on Oracle's board through particularized facts demonstrating that the board faced a substantial likelihood of liability for utterly failing to carry out their duty of oversight. This so-called *Caremark* claim is widely recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Moreover, Lead Plaintiff would also have had to show that a majority of the board lacked independence or disinterest. Indeed, Defendants were expected to have argued that the operative standard for demonstrating a failure of oversight—the utter failure to implement and maintain internal controls—was undermined by the fact that Oracle had internal control reporting processes and that the Finance and Audit Committee was delegated the duty to monitor the Company's financial reporting. It was also expected that Defendants would argue that Plaintiff could not establish demand futility by showing that the directors faced a substantial likelihood of liability because there were no red flags of improper conduct upon which a substantial likelihood of liability could be based. Finally, Defendants would argue that Oracle's outside directors are independent, and that Lead Plaintiff could not establish their lack of independence from the controlling stockholders (currently, 13 of Oracle's

8

15 directors are outside directors).  *See* Joint Decl. ¶ 25.  Hence, Lead Plaintiff would have had to show that those outside directors breached their duty of loyalty by "knowingly and completely fail[ing] to undertake their responsibilities."  *HP Derivative Litig., supra*, 716 F. App'x. at 606 (citation omitted).

Even if Lead Plaintiff prevailed at the pleading stage, proving stockholder derivative claims is notably difficult and notoriously uncertain.  *See Pac. Enters.*, 47 F.3d at 378 (noting that "derivative lawsuits are rarely successful").  Significant questions would remain about whether Lead Plaintiff could secure evidence sufficient to overcome motions for summary judgment predicated on the "business judgment rule," which affords directors the presumption that they acted on an informed basis and in the good faith belief that the actions taken were in the best interest of the company.  *See, e.g., In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).  Lead Plaintiff would also have to overcome the exculpatory provision in Oracle's Bylaws adopted pursuant to 8 Del. Code § 102(b)(7), which forecloses the recovery of monetary damages from directors unless the directors' actions involve a breach of the duty of loyalty, bad faith, intentional misconduct, a knowing violation of law, or an improper self-serving transaction.  *See* Joint Decl. ¶ 26.

Even if the litigation proceeded, Oracle's Board could have chosen to establish a "Special Litigation Committee." A Special Litigation Committee has the authority to move to dismiss a lawsuit if it determines that pursuing the claims is not in the best interest of the company.  Such a significant risk creates additional uncertainty about the outcome of the case.  Moreover, a Special Litigation Committee could seek a stay of litigation during the pendency of its investigation, causing further delay in any resolution of this action and preventing the implementation of important corporate governance reforms at Oracle.  *Id*. ¶ 27.

Furthermore, on June 1, 2023, the Ninth Circuit held (in a split *en banc* decision) that forum selection clauses in bylaws requiring stockholders to file derivative claims in the Delaware Court of Chancery are enforceable as applied to claims asserted derivatively under Section 14(a) of the Securities Exchange Act of 1934. *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023).  Accordingly, Defendants were expected to move to enforce Oracle's Bylaws forum selection clause, which, if

9

1  successful, would have required Lead Plaintiff to refile in Delaware, inevitably increasing the burden
2  and expense of maintaining this case.

3      Further, the litigation would be extremely complex, costly, and of substantial duration.
4  Though Lead Plaintiff received and reviewed a substantial number of internal documents reflecting
5  the Board's and its Committees' consideration of matters relating to Oracle's financial reporting,
6  additional document discovery would need to be completed.  Dozens of depositions of witnesses
7  would have to be taken concerning complex facts bearing on the Defendants' decision-making, and
8  oversight of the Company's internal practices and public disclosures.  Although Oracle settled the
9  Securities Class Action, this Court found it was a "close call" at the motion to dismiss stage and only
10 allowed the case to proceed on a "narrow omission-based theory of fraud" based on a limited number
11 of surviving statements. *See* Case No. 5:18-cv-04844-BLF, ECF No. 84 at 23.

12     During settlement discussions, Defendants vigorously contested whether any amount could
13 be recovered at all in this Action, and that Lead Plaintiff had not established demand futility.  The
14 challenges involved in proving damages were daunting, especially in light of the Court's narrow
15 ruling in the Securities Class Action and the size of the settlement in that matter.  *See In re NVIDIA,*
16 *supra,* 2008 WL 5382544, at *3 (risks regarding the amount of recoverable damages weighs in favor
17 of settlement.).  Finally, even victory at trial is no guarantee nor is there any certainty a decision
18 would not be reversed on appeal.

19     On balance, all the risks associated with continued litigation weigh in favor of approval of the
20 proposed Settlement.  The Settlement eliminates these and other risks, including the very real risk of
21 no recovery at all after years of litigation, while providing Oracle now with substantial benefits geared
22 at addressing the alleged behavior that gave rise to this litigation.

23  **C.    The Settlement Was Negotiated After Substantial Investigation by
         Counsel with Extensive Experience in Complex Derivative Litigation**
24
25     Co-Lead Counsel have determined that the Settlement confers significant benefits on Oracle
26 and that it is fair, reasonable, and in the best interests of Oracle and its stockholders.  Co-Lead Counsel
27 reached this conclusion after reviewing and analyzing data from many sources specific to this matter,
28 including, but not limited to: (1) Oracle's public filings with the SEC, press releases, announcements,

10

NOTICE OF MOTION AND MOTION FOR PRELIM. APPROVAL OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION; MPA
LEAD CASE NO. 5:19-CV-00764-BLF

transcripts of investor conference calls, and news articles; (2) securities analyst, business, and financial media reports about Oracle; and (3) records produced by Oracle. *See* Joint Decl. ¶ 32. Co-Lead Counsel have also (1) researched the applicable law with respect to the claims asserted (or which could be asserted) in the stockholder derivative actions and the potential defenses thereto; (2) researched, drafted, and filed several complaints; (3) prepared a detailed mediation statement for the Mediator; (4) reviewed documents and information provided in advance of the mediation and during settlement negotiations; and (5) engaged in months-long settlement discussions with Defendants' counsel. *Id.* Thus, Co-Lead Counsel were able to fully assess the strengths and weaknesses of the claims asserted in the Action.

Further, the arm's-length mediated negotiations of the Settlement were conducted on both sides by highly qualified and experienced counsel. As set forth in their firm resumes, Joint Decl., Exs. 2 & 3, Co-Lead Counsel have extensive experience in stockholder derivative and securities litigation. Accordingly, Co-Lead Counsel are well-suited to assess the merits of this case and the Settlement relative to the risks of continued litigation. Additionally, Defendants are represented by highly regarded, experienced defense firms, which ensures that Oracle and the Individual Defendants were well-advised and knowledgeable about the strengths and weaknesses of their defenses and could act in a well-informed manner as well. Counsel for each of the Parties has carefully weighed the terms of the proposed Settlement and considered its adequacy and fairness in light of the relevant litigation risks and have determined that the Settlement is in the best interests of their respective clients. This determination weighs strongly in favor of preliminary approval of the proposed Settlement. *See, e.g., Pac. Enters.*, 47 F.3d at 378 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *In re Pinterest Derivative Litig.*, No. 20-08331, 2022 WL 484961, at *7 (N.D. Cal. Feb. 16, 2022) (the experience and endorsement of counsel are relevant in evaluating a settlement.)

Further, the Settlement is supported by the Lead Plaintiff, which oversees public assets for the City of Providence. Lead Plaintiff was closely involved in the litigation throughout its course, including the mediation process. Guided by its counsel's expertise, Lead Plaintiff believes the Settlement is in the best interests of Oracle and its current stockholders. *See* Joint Decl. ¶ 37.

11

**D.     The Settlement Was Negotiated at Arm's-Length with the Active Assistance and Oversight of an Experienced Mediator**

As discussed above, the Settlement is the result of approximately two years of vigorous, arm's-length negotiations among experienced, well-informed counsel.  The negotiations were overseen and facilitated by Jed Melnick, an experienced mediator with JAMS, who presided over a formal mediation session and months of informal negotiations and the exchange of information by the Parties.  Mr. Melnick also presided over the Securities Class Action and settlement, and thus was highly familiar with the relevant factual and legal issues.

The involvement of an experienced mediator is strong evidence of the integrity of the settlement negotiations.  *See Hefler v. Wells Fargo & Co.*, No. 16-cv- 05479-JST, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018) ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.");  *HP Derivative  Litig., supra*, 716 F. App'x. at 608 (court found settlement negotiations were not collusive because of mediators' involvement); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (granting preliminary approval and holding that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

**E.     The Proposed Attorney's Fees and Expenses Are Fair and Reasonable**

Following the agreement on corporate reforms, Lead Plaintiff and Oracle separately negotiated, with the assistance of Mr. Melnick, the parameters for Plaintiffs' Counsel to seek Court approval of reasonable attorneys' fees and expenses, to be paid by Oracle, as well as a service award to Lead Plaintiff.  *See* Joint Decl. ¶ 38. Pursuant to the Settlement, if approved by the Court, Oracle has agreed to pay Plaintiffs' Counsel a Fee and Expense Amount of no more than $700,000 for the benefits conferred on Oracle by the Settlement, including a service award of $5,000 for Lead Plaintiff to be paid from any Fee and Expense Amount approved by the Court.  *See* Stipulation ¶¶ 19-24.

The basis of Co-Lead Counsel's fee and expense request will be detailed in a future motion filed with the Court.  To date, Co-Lead Counsel's current expenses are approximately $70,000.  *See* Joint Decl. ¶ 39.  Assuming expenses at this level are approved by the Court, together with a service

12

award of $5,000 to Lead Plaintiff, approximately $625,000 would remain to be applied to Plaintiffs' Counsel's attorneys' fees request.  Fees at this level would be fair and reasonable under the circumstances of this case and represent a *negative* fractional multiplier of approximately 0.43 of Co-Lead Counsel's lodestar of $1.44 million—well below the customary range of fee awards.  *Id.*; *In re McKesson Corp. Derivative Litig.*, No. 4:17- cv-0185-CW (N.D. Cal. Apr. 22, 2020) (JD, Ex. 5) (finding a 2.9 multiplier reasonable in a derivative action); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation.") (collecting cases); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–54 & n.6 (9th Cir. 2002) (surveying the range of multipliers approved by other courts and finding that multiples ranging from 1.0 to 4.0 are frequently awarded in common fund cases); *Buccellato v. AT&T Operations, Inc.*, No. 10-00463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding 4.3 lodestar multiplier) (collecting cases).  Similarly, the proposed $5,000 service award to Lead Plaintiff would be fair and reasonable, and reflects the significant amount of time and effort spent by the City of Providence in this Action.

In sum, Lead Plaintiff and Co-Lead Counsel have undertaken significant efforts to ensure the Settlement is in the best interest of Oracle and its current stockholders.  Given the substantial relief obtained for the Company, the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved by the Court.

## V.   THE PROPOSED NOTICE IS REASONABLY CALCULATED TO APPRISE CURRENT STOCKHOLDERS OF THE ACTION AND AFFORD THEM AN OPPORTUNITY TO OBJECT

Notice should be approved where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 736 F. App'x. 639, 640 (9th Cir. 2018) (internal quotation omitted). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

13

NOTICE OF MOTION AND MOTION FOR PRELIM. APPROVAL OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION; MPA
LEAD CASE NO. 5:19-CV-00764-BLF

1   Here, the Company has agreed to undertake the administrative responsibility for giving notice

2   to Current Oracle Stockholders and will be solely responsible for paying the costs and expenses

3   related to providing notice of the Settlement, as set forth in the Stipulation or as may be required by

4   the Court. *See* Stipulation ¶12. The proposed Notice of Pendency and Settlement of Stockholder

5   Derivative Action ("Long Form Notice), Exhibit B-1 of the Stipulation, and Summary Notice of

6   Pendency and Settlement of Derivative Action ("Summary Notice"), Exhibit B-2 of the Stipulation,

7   collectively provide: information about the terms and provisions of the Settlement; the benefits that

8   the Settlement provides for Oracle; the scope of the releases; the proposed Fee and Expense Amount

9   and service award; the date, time, and place of the Settlement Fairness Hearing; and the procedures

10  and dates for submitting objections and attending the hearing.

11  The proposed methods of dissemination of notice also comport with due process and will

12  provide Current Oracle Stockholders with sufficient opportunity to consider the Settlement terms and

13  determine whether to object in an efficient and economical manner.  As proposed, within ten (10)

14  business days after the entry of the Preliminary Approval Order, the Company will: (a) post a copy

15  of the Long Form Notice, and the Stipulation (and its Exhibits) on the Investor Relations page of the

16  Company's website; (2) publish the Summary Notice in *Investor's Business Daily* and issue a press

17  release containing the Summary Notice on GlobeNewswire; and (3) request that the Depository Trust

18  Company ("DTC") post the Long Form Notice on its LENS platform.  The Summary Notice will also

19  provide a link to the Investors Relations page on the Company's website where the Long Form Notice

20  and the Stipulation can be viewed.  This webpage will be maintained through the date of the

21  Settlement Fairness Hearing.

22  Similar targeted and cost-efficient notice programs have been approved within the Ninth

23  Circuit and courts in this District, under circumstances like those here.  *See e.g., In re Atmel Corp.*

24  *Derivative Litig.,* No. 5:06-cv-04592-JF, 2010 WL 9525643, at *5 (N.D. Cal. Mar. 31, 2010) (notice

25  was issued via (i) a press release, (ii) a link on the company's website, and (iii) a notice published in

26  *Investor's Business Daily*); *In re Oracle Corp. Derivative Litig.*, Master File No. C-10-03392-RS,

27  ECF No. 35 (N.D. Cal. July 17, 2013) (approving notice program of publication in *Investor's Business*

28  *Daily* and posting on the Investor Relations page of the Company's website).

NOTICE OF MOTION AND MOTION FOR PRELIM. APPROVAL OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION; MPA
LEAD CASE NO. 5:19-CV-00764-BLF

For all the foregoing reasons, it is respectfully submitted that the Court should preliminarily approve the proposed Settlement and the forms of notice to Current Oracle Stockholders.

## VI.    PROPOSED DEADLINES AND SCHEDULE OF EVENTS

| | |
|---|---|
| Notice to be published and posted as provided in the Preliminary Approval Order (¶ 4) | Ten (10) business days following the entry of the Preliminary Approval Order |
| Motions for Final Approval and Fee and Expense Amount and Service Award to be filed and served (Preliminary Approval Order ¶ 7) | 35 calendar days prior to the Settlement Fairness Hearing |
| Objections to the proposed Settlement and/or motion for Fee and Expense Amount and Service Award; Notice of intent to appear at Settlement Fairness Hearing (Preliminary Approval Order ¶ 9) | 21 calendar days prior to the Settlement Fairness Hearing |
| Proof of Notice and Summary Notice (Preliminary Approval Order ¶ 5) | 21 calendar days prior to Settlement Fairness Hearing |
| Reply papers in further support of the motions and addressing any written objections filed by a Current Oracle Stockholder (Preliminary Approval Order ¶ 7) | 14 calendar days prior to the Settlement Fairness Hearing |
| Settlement Fairness Hearing (Preliminary Approval Order ¶ 2) | At least 70 calendar days after entry of the Preliminary Approval Order. |

\*   \*   \*

## VII.    CONCLUSION

It is respectfully submitted that the proposed Settlement is within the range of what is fair, reasonable, and adequate. Thus, for the reasons set forth above, and consistent with Fed. R. Civ. P. 23.1, Lead Plaintiff respectfully requests that this Court: (1) grant preliminary approval to the Settlement; (2) approve the form and method for providing notice to Current Oracle Stockholders regarding the pendency of the Action and the Settlement, including the proposed Long Form Notice and Summary Notice; (3) direct that the Long Form Notice and Summary Notice be published and posted as provided in the Stipulation and Preliminary Approval Order; and (4) set a date for the Settlement Fairness Hearing and filing deadlines based on that hearing date.

Dated: April 5, 2024

COTCHETT PITRE McCARTHY LLP


By: */s/ Mark C. Molumphy*

Mark C. Molumphy
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger
*tredenbarger@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

LABATON KELLER SUCHAROW LLP

Alfred L. Fatale III
*afatale@labaton.com*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Lead Counsel for Lead Plaintiff City of Providence*

16

## **SIGNATURE ATTESTATION**

I, Mark C. Molumphy, am the ECF user whose identification and password are being used to file the foregoing Plaintiffs' Unopposed Notice of Motion and Motion for Preliminary Approval of Proposed Settlement, Memorandum of Points and Authorities in Support.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained.

Dated: April 5, 2024                                    COTCHETT PITRE McCARTHY LLP


                                                       By:  _/s/ Mark C. Molumphy_
                                                            Mark C. Molumphy